# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNION TRUST PHILADELPHIA, LLC, | : | CHAPTER 11 |
| | : | |
| DEBTOR. | : | BANKRUPTCY NO. 11-12565-MDC |
| | : | |
| UNION TRUST PHILADELPHIA, LLC, | : | |
| | : | |
| PLAINTIFF, | : | |
| v. | : | ADVERSARY NO. 11-00429-MDC |
| | : | |
| SINGER EQUIPMENT COMPANY, INC., SUNLIGHT ELECTRICAL CONTRACTING CO., INC., AND THOMAS MACKIN, | : | |
| | : | |
| DEFENDANTS. | : | |

## MEMORANDUM OPINION

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

### INTRODUCTION

This Memorandum Opinion is consistent with the Court's June 7, 2011 order (the "Order") issuing a preliminary injunction staying all enforcement proceedings against the principals of the Debtor, Joseph Grasso and Garret Miller and is submitted pursuant to Local Rule 8001-1(b)[1] to further expound upon the reasons for the Order. The discussion below also constitutes the Court's findings of facts and conclusions of law as required by Fed. R. Civ. P. 52 made applicable to this matter by Fed. R. Bankr. P. 7052.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2011 (the "Petition Date"), Union Trust Philadelphia, LLC (the "Debtor") filed a chapter 11 petition pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the

---

[1] Local Rule 8001-1(b) provides: Opinion in Support of Order. The bankruptcy judge whose order is the subject of an appeal may, within 14 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion. L.B.R. 8001-1(b)(2008).

"Code").[2]  Thereafter, the Debtor filed an adversary complaint (the "Complaint") naming as defendants Singer Equipment Company, Inc. ("Singer"), Sunlight Electrical Contracting Co., Inc. ("Sunlight"), and Thomas Mackin ("Mackin," collectively with Singer and Sunlight, the "Defendants"), and seeking an extension of the automatic stay under Section 362(a) of the Code and for injunctive relief pursuant to Section 105(a) of the Code.  Simultaneous with the filing of the Complaint, the Debtor filed a motion for preliminary injunction (the "Motion") in which the Debtor requested that this Court enter an order extending the automatic stay to include certain actions brought by the Defendants and now pending against Joseph Grasso and Garret A. Miller (the "Nondebtor Parties").  In the alternative, the Debtor requested that the Court enjoin the pending actions pursuant to Section 105 of the Code.

The Debtor seeks an injunction preventing the continuance of the following "Nondebtor Proceedings":  (1) *Singer Equipment Co., Inc. v. Chestnut Restaurant Ventures, a/k/a, t/a Union Trust Steakhouse, Joe Grasso, Garret Miller, John Dunfee, Terry White, and Ed Doherty*, pending in the Common Pleas Court of Philadelphia County, Pennsylvania under docket number April Term 2009 No. 03838; (2) *Singer Equipment Co., Inc. v. Chestnut Restaurant Ventures, LLC, Joseph Grasso, and Garret Miller* pending in the Common Pleas of Montgomery County under docket number 2011-12633; (2) *Sunlight Electrical Contracting Co., Inc. v. Chestnut Restaurant Ventures, Joe Grasso, Garret Miller, John Dwarf, Terry White, and Ed Doherty* pending in the Common Pleas Court of Philadelphia County, Pennsylvania under docket number June Term 2009 No. 03707; and (4) *Thomas Mackin v. Chestnut Restaurant Ventures, WSC 717 Associates, L.P., Union Trust Philadelphia, LLC, Joe Grasso, Garret Miller, John Dunfee, and John Frankowski* now pending in the Montgomery County Court of Common Pleas docketed under case number 11-09462 (collectively, the "Nondebtor Proceedings").  Each of the Nondebtor Proceedings allegedly constitutes an attempt by the Defendants to collect from the Nondebtor

---

[2] On the same date, WSC 717 Associates, L.P. ("WSC 717") filed for chapter 11 bankruptcy relief and was assigned bankruptcy number 11-12567.  WSC 717 is a limited partnership duly organized under the laws of Pennsylvania that regularly maintains its business and financial records at 717 Chestnut Street, Philadelphia, Pennsylvania.  WSC 717 is an entity that holds title to certain commercial real estate located at 717 Chestnut Street, Philadelphia, Pennsylvania 19107 (the "Property").  WSC 717 claims ownership of all equipment and furnishings used by the Debtor in its operation of the restaurant located at the Property.  In addition, Joseph Grasso serves as WSC 717's designated managing member.

Parties amounts due from the operation of the Debtor and its predecessor entities.

As alleged by the Debtor's Complaint and Motion, the Court of Common Pleas of Philadelphia County entered an Order dated April 4, 2011, granting a judgment in favor of Singer against Chestnut Restaurant Ventures in the amount of $1,317,555.86, and separately entered a judgment against Joseph Grasso and Garret Miller each in the amount of $350,000 (the "Singer Judgment"). Mr. Grasso and Mr. Miller have appealed the entry of this judgment.

Singer subsequently transferred the Singer Judgment to Montgomery County and attempted to collect upon the judgment by executing against the personal property of Mr. Grasso located at his residence. The Sheriff of Montgomery County was refused entry to Grasso's residence. As a result, Singer filed a Motion to obtain a Break and Enter Order (the "Break-In Motion") to allow the Sheriff to forcibly enter Mr. Grasso's residence in order to effectuate a Writ of Execution and levy on Mr. Grasso's personal assets in his home. A hearing on the Break-In Motion was scheduled for June 2, 2011.

In its Motion, the Debtor argued that the prosecution of the Nondebtor Proceedings will interfere with the ability of the Nondebtor Parties to assist in the Debtor's reorganization. The Debtor further argued that pursuant to the test articulated by Judge Fox in *Monroe Well Service, Inc.*, 67 B.R. 746 (Bankr. E.D. Pa. 1986) and further applied by Judge Frank in *Saxby's Coffee Worldwide, LLC v. John Larson et al.*, 440 B. R. 369 (Bankr. E.D. Pa. 2009), that unusual circumstances exist justifying the issuance of a Section 105 injunction staying the Nondebtor Proceedings.

Singer filed a response to the Motion on May 31, 2011 (the "Response"). In the Response, Singer argued that this Court lacks jurisdiction to consider the requested relief pursuant to either the Anti-Injunction Act, 28 U.S.C. § 2283, or the *Rooker-Feldman* doctrine. Singer also argues that this Court lacks related-to jurisdiction over the Nondebtor Proceedings. Finally, Singer argued that assuming this Court does have jurisdiction to consider the requested relief, the Debtor cannot satisfy the standard for entry of a Section 105 injunction staying the prosecution of the Nondebtor Proceedings.

This Court held a hearing on the matters raised by the Motion and the Response on June 1, 2011. At the hearing, the Debtor presented the testimony of Mr. Miller and Mr. Grasso in support of the Motion.

3

Both Mr. Miller and Mr. Grasso testified as to their day-to-day involvement in the Debtor's operations as well as the ownership structure of the Debtor and its affiliated entities. Of particular relevance to the matters raised by the Motion, Mr. Miller and Mr. Grasso testified as to the status of the Nondebtor Proceedings and their involvement in those actions. Finally, Mr. Miller and Mr. Grasso testified as to their efforts to secure on the Debtor's behalf a loan commitment to assist in the Debtor's reorganization and that this loan will require the financial assurances and guarantees of Mr. Miller and Mr. Grasso. The Defendants appeared at the hearing and opposed the Motion. The Defendants did not present any witnesses in support of their opposition, but cross-examined Mr. Miller and Mr. Grasso.

As discussed herein, this Court found at the close of the hearing that the Debtor had established that the prosecution of the Nondebtor Proceedings presents a serious threat of interference with the ability of the Nondebtor Parties to assist with the Debtor's reorganization. The Court further found that the risk to the Defendants, if their prosecution of the Nondebtor Proceedings is delayed, did not outweigh the possible harm that would occur to the Debtor's reorganization efforts if the actions against the Nondebtor Parties were not stayed. On June 7, 2011, the Court entered its Order granting the Motion and enjoining the Nondebtor Proceedings.

**LEGAL DISCUSSION**

**I.        This Court's Jurisdiction**

The Defendants assert that pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, this Court is without jurisdiction to address the relief requested by the Motion. This Court finds Defendants' argument unavailing.

The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. However, as recognized by the Third Circuit in *In re James*, 940 F2d 46, 51 (3d Cir 1991), there is an exception to the prohibitions of the Anti-Injunction Act for bankruptcy courts. There, the Court stated:

4

> Although the Anti-Injunction Act, 28 U.S.C. § 2283, generally prevents a federal court from enjoining state court proceedings, Section 105(a) of the Bankruptcy Code creates an exception to this general statutory rule by authorizing a bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Act.

*Id.*

Although bankruptcy courts are excepted from the Anti-Injunction Act as a result of Section 105 of the Code, this exception is not without limitation. Namely, a bankruptcy court may exercise its Section 105 authority to stay a state court proceeding, which "is merely a suspension of the proceedings," *Id.*. The bankruptcy court, however, cannot use its Anti-Injunction exception to vacate a state court judgment following a collateral review on the merits. "The former action is permissible ("a bankruptcy court has the power to stay proceedings." *Id.*) while the latter is not ("federal collateral review of a state proceeding is inappropriate." *Id.* at 52). *In re Brown*, 244 B.R. 62, 70 (Bankr. N.J. 2000) (discussing *James* and the bankruptcy court exception to the Anti-Injunction Act).

Here, the Debtor has requested that the Court suspend the Nondebtor Proceedings only. No review of the underlying court judgment has been requested nor will such a review be conducted by this Court. As such, this Court finds that in accordance with the Third Circuit's decision in *James* it has jurisdiction and the authority to enter an injunction to enjoin state court proceedings.[3]

Similarly, this Court finds the Defendants reference to the *Rooker-Feldman* doctrine to be misplaced. By seeking an order enjoining the prosecution of the Nondebtor Proceedings, the Motion does not seek review of any state court judgment. Rather, the Motion only seeks a stay of the enforcement of existing judgments. *In re Funches*, 381 B.R. 471, 485 (Bankr. E.D. Pa. 2008) (holding *Rooker-Feldman* doctrine to have no application where relief requested did not seek a review of the merits of a state court decision). For these reasons, this Court finds that it has jurisdiction to consider the requested relief.

**II.     The Movant's Request for Extension of the Automatic Stay**

"The automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), applies only to a 'debtor' and

---

[3] Moreover, this Court agrees with the analysis of Judge Fox in *In re Monroe Well Service, Inc.* whereby he found "that an action for an injunction under Section 105 is a core proceeding under 28 U.S.C. § 157(b)." *Monroe Well Service, Inc.*, 67 B.R. at 754.

5

may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *Saxby's Coffee*, 440 B. R. at 375 (quotations omitted); *see also McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) ("the clear language of section 362(a) stays actions only against a 'debtor'"); *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779 (Bankr. S.D.N.Y. 1996) ("As a general proposition, the automatic stay is limited to the debtor, and does not apply to actions against non-debtor third parties."). Despite this apparently unqualified language, courts have recognized an exception to the rule and allowed under certain "unusual circumstances" the "extension" of the automatic stay to protect nondebtor parties. *McCartney*, 106 F.3d at 510 (finding section 362(a) applied to deficiency judgment action where debtor as guarantor was secondarily liable to nondebtor defendant already shown to be insolvent). Unusual circumstances exist when "there is such identity between the debtor and third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *Id.*; *see also Bidermann*, 200 B.R. at 784 ("The case law indicates that 'unusual circumstances' exist where the claim clearly arises out of the defendant's actions in his capacity as the debtor's officer, and he is undisputedly entitled to indemnity."); *Aetna Casualty & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 60 (S.D.N.Y. 1992) (holding unusual circumstances do not exist where the debtor's insider is independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy).

Many courts, however, are not supportive of this view and at least one Circuit has rejected the proposition that the automatic stay may be extended to nondebtors parties. *O'Malley Lumber Co. v. Lockhard (In re Lockhard)*, 884 F.2d 1171, 1179 (9th Cir. 1989); *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (observing that chapter 11, unlike chapter 13, contains no provision extending automatic stay protections to non-debtors jointly liable with the debtor). For this reason, most courts consider Section 105 of the Code as the appropriate source of authority from which to fashion injunctive relief restraining the prosecution of third-party litigation. *See, e.g., Philadelphia Newspapers LLC v. Alycia Lane (In re Philadelphia Newspapers LLC)*, 410 B.R. 404, 411-12 (Bankr. E.D. Pa. 2009)

6

("The law is clear that in some circumstances discretionary stays, beyond the scope of Section 362, are appropriate and that a court's power to issue such injunctions stems from Section 105 of the Code."); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 385 B.R. 17, 30 (Bankr. D. Del. 2008) (relying on Section 105 to enjoin third party proceedings).

### III. Test for Issuance of a Section 105 Injunction to Restrain Actions Against Non-Debtors

This Court may enjoin third-party proceedings pursuant to its Section 105 powers. *In re Kaplan*, 104 F.3d 589, 595 (3d Cir. 1997) (recognizing "the bankruptcy court has the power under Section 105 to enjoin creditors from proceeding in a state court against third parties where failure to enjoin would affect the bankruptcy estate"). Contrary to the Debtor's characterization, this power does not stem from and is independent of Section 362 of the Code.

The applicable test to determine whether "unusual circumstance" exist to justify the issuance of a Section 105 injunction to restrain actions against non-debtors is well established. Originally formulated by Judge Fox in *In re Monroe Well Service, Inc.*, 67 B.R. 746, 751–52 (Bankr. E.D. Pa. 1986), the test consists of the following four prongs:

1. The first requirement is that there be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize.

2. Second, there must be a reasonable likelihood of a successful reorganization.

3. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained.

4. Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests.

*In re Monroe Well Service, Inc.*, 67 B.R. 746, 752-53 (Bankr. E.D. Pa. 1986).[4]

Courts applying this test recognize that it is "intensely fact driven" and dependent on "the

---

[4] The *Monroe Well* test has been repeatedly and consistently relied upon by other judges in the bankruptcy court for the Eastern District of Pennsylvania, and, as well, by judges from other jurisdictions to determine whether to issue an injunction staying nondebtor litigation. *Saxby's Coffee*, 440 B. R. at 379; *In re Philadelphia Newspapers LLC*, 410 B.R. 404; *Official Comm. of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP)*, 237 B.R. 275 (Bankr. E.D. Pa. 1999); *In re University Medical Ctr.*, 82 B.R. 754 (Bankr. E.D. Pa. 1988) ("The law in reference to the use of § 105(a) to extend bankruptcy stays to non-debtors has been articulated carefully and exhaustively by Judge Fox"); *In re United Health Care Org.*, 210 B.R. 228, 233 (S.D.N.Y. 1997).

7

debtor's ability or inability to marshal facts demonstrating that the pending nonbankruptcy proceedings against the nondebtors pose a serious risk to its reorganization and the court's assessment of the relative harms each side may suffer from the grant or denial of the injunction request." *Saxby's Coffee*, 440 B. R. at 380.  As summarized by Judge Frank, in *Saxby's Coffee*, decisions issuing a Section 105 injunction to prevent the continuance of litigation involving non-debtor parties may be organized into three categories:

> 1. when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize;
>
> 2. upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan;
>
> 3. where the relationship between the non-debtor and debtor is such that a finding of liability against the non-debtor would effectively be imputed to the debtor, to the detriment of the estate.

*Saxby's Coffee*, 440 B. R. at 379.  As discussed more fully below, this Court finds that the facts in this matter implicate all three categories.

In *Saxby's Coffee*, Judge Frank addressed remarkably similar circumstances to those now before the Court.  The *Saxby's Coffee* debtor was the franchisor of a chain of coffee shops which did own and operate several of its franchise restaurants.  While not a franchisor, the Debtor in this case is like the *Saxby's Coffee* debtor in that they both operate restaurants.  Moreover, the Debtor is like the *Saxby's Coffee* debtor in that they both share a common owner, Joseph Grasso.  Not only is Joseph Grasso one of the Debtor's principals, he was one of the principals of the debtor in *Saxby's Coffee*.[5]

In explaining why an injunction should be issued to enjoin the litigation against Mr. Grasso, Judge Frank stated the following:

> I conclude that diversion of Grasso's time, energy and attention to defense of the Non–Bankruptcy Cases poses a meaningful threat to the Debtor's reorganization.  Whatever the evidence lacked in the way of specificity regarding the precise amount of time he expends in managing the Debtor is more than made up by his role as the Debtor's primary investor.  After hearing his testimony, I have little doubt that his active participation is integral to the Debtor's reorganization and that he will need to devote a

---

[5] In fact, Judge Frank even recognized that, in his testimony before in support of his request for a Section 105 injunction, Mr. Grasso "provided little specificity regarding his business assets, other than mentioning that he owns a restaurant called the 'Union Trust.'"  *Saxby's Coffee*, 440 B. R. at 379.

8

> substantial amount of his time in the immediate weeks ahead to the formulation and implementation of the Debtor's reorganization strategy. Requiring him to spend a substantial amount of time addressing the Non–Bankruptcy Cases poses a meaningful threat to the Debtor's successful reorganization.

*Saxby's Coffee*, 440 B. R. at 379. On this basis, Judge Frank found that the first prong of the *Monroe Well* test was satisfied with regard to any litigation involving Mr. Grasso.

Here, Mr. Grasso and Mr. Miller have provided testimony to the same effect. Both Mr. Grasso and Mr. Miller testified that a substantial amount of their time is devoted to the day-to-day operation of the Debtor. In addition, they both testified that they are actively involved in the Debtor's attempts to secure post-petition financing. There is evidence that Mr. Grasso has already provided post-petition funding to the Debtor. For example, Mr. Grasso has funded tax payments to the Internal Revenue Service on behalf of the Debtor. In addition, Mr. Grasso and Mr. Miller are in the process of arranging for funding on behalf of the Debtor to fund its plan of reorganization. Without their unfettered assistance, the Debtor's ability to reorganize is clearly diminished and the Debtor's estate risks substantial harm if it is deprived of Mr. Grasso and Mr. Miller's assistance in reorganizing the Debtor. As a result, this Court finds that the first prong of the *Monroe Well* test is also satisfied here.

Moving on to the second prong, the likelihood of a successful reorganization, Judge Frank relied on the fact that the debtor had negotiated cash collateral agreements with its primary secured lender and had continued to operate its business as evidence that the prong weighed in favor of granting the relief requested. *Saxby's Coffee*, 440 B.R. at 381. Here, the same is true for the Debtor. The Debtor has negotiated cash collateral agreements with TD Bank, N.A., its acknowledged secured lender, and is paying adequate protection payments to Rewards Network Establishment Services, Inc., its disputed secured lender.[6] In addition, the Debtor continues to operate its restaurant. Based on this evidence, this Court finds that at this early stage in the proceedings the Debtor's prospects for a successful reorganization remain viable and is entitled to additional time to formulate its plan of reorganization.

---

[6] I hereby take judicial notice of the items filed on the Docket in the Debtor's main case, including the Fourth Interim Order Authorizing Use of Cash Collateral and Continued Provision for Adequate Protection dated June 24, 2011 [Docket No. 106]. *See In re Jabarin*, 395 B.R. 330, 334 n. 3 (Bankr. E.D. Pa. 2008).

As to the third prong, the balance of hardships, Judge Frank relied on the failure of the plaintiffs in the non-bankruptcy proceeding to identify any particularized harm that they would suffer if their enforcement of their claims against the nondebtors was delayed. Due to this failure, Judge Frank found that any harm to the plaintiffs did not outweigh the potential harm to the debtor, "the distraction of the Non-Bankruptcy Cases threatens the Debtor's ability to reorganize." *Saxby's Coffee*, 440 B.R. 369, at 382. Here, the Defendants have also failed to identify any harm that they would suffer if the continuation of the Nondebtor Proceedings is stayed. This Court recognizes that the Defendants have expended considerable time, effort and resources to secure judgments against the Nondebtor Parties. However, the fact that efforts to collect on the judgments may be delayed for short period in and of itself is not sufficient to outweigh the potential harm to the Debtor's estate if the Debtor is deprived of the full assistance of Nondebtor Parties. Moreover, to minimize any harm to the Defendants, this Court, at the request of the Defendants, will require the Nondebtor Parties to provide financial statements that will allow the Defendants to monitor the assets of the Nondebtor Parties to ensure against dissipation. As a result, the third prong of the *Monroe Wells* test is also satisfied herein.

As for the fourth prong, Judge Frank in *Saxby's Coffee* found that the public interest favored the issuance of an injunction. He identified three reasons for how the public interest was benefitted: (1) the injunction would foster the debtor's reorganization; (2) the injunctive would protect the integrity of the claim resolution process; and (3) judicial economy would be served by the concentration of litigation in the bankruptcy court. *Saxby's Coffee*, 440 B.R. at 383-84; *see also McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 512 (3d Cir. 1997) (recognized that centralization of all claims in bankruptcy court served public interests). The same considerations are implicated by the Debtor's Motion. The public interest supports issuance of the injunction because, among other things, it will foster the debtor's reorganization and protect the integrity of the claims resolution process. As such, the fourth prong of the *Monroe Wells* test is also satisfied.

Having found that the Debtor has presented evidence establishing each of the four prongs of the *Monroe Wells* test, this Court finds that unusual circumstances do exist and that a Section 105 injunction

10

staying the Nondebtor Proceedings is warranted. In issuing the injunction, this Court follows the roadmap established by Judge Frank in *Saxby's Coffee*. To alleviate the Defendants' concerns with regard to the dissipation of assets belonging to the Nondebtor Parties, this Court will require the Nondebtor parties to provide sworn written personal financial statements that shall set forth all information that would be included and disclosed on bankruptcy schedules A through G. The statements shall be confidential and not filed on this Court's public docket. Moreover, the injunction will be of limited duration and will expire on August 31, 2011. This Court believes that this amount of time should be sufficient to allow the Debtor the benefit of assistance of the Nondebtor Parties in the formulation of its plan of reorganization. If at the expiration of this period, this Court finds that the Debtor has not acted expeditiously in resolving its reorganization, this Court will revisit whether the continuation of the injunction is warranted. Similarly, the Court will revisit its issuance of the injunction if it is determined that based upon the information disclosed on the financial statements the Nondebtor Parties are causing the dissipation of their assets.

**IV.**     **Summary**

The Motion is granted. This Court finds that the Debtor has established that issuance of an injunction staying the Defendants from pursuing the Nondebtor Proceedings is warranted. An order enjoining the prosecution of the Nondebtor Proceedings will be entered.

BY THE COURT:

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

DATED: JUNE 29, 2011

11